SOUTHWICK, P.J.,
for the Court.
¶ 1. Alvin Robinson was convicted of manslaughter by a Lee County jury. Among the issues alleged on appeal is that the evidence was insufficient, that the trial court unnecessarily admitted gruesome photographs of the victim, that the indictment should have been dismissed on speedy trial grounds, that improper testimony about the defendant’s knife was permitted, that peremptory challenges to jurors were erroneously resolved, and that a requested self-defense instruction should have been given. We find reversible error as to the last issue. We therefore reverse and remand.
FACTS
¶ 2. The conviction Robinson now appeals resulted from the third criminal trial on this charge. It is his second appearance before this court. The first trial end *891 ed in a mistrial, the second in a conviction which this court reversed and remanded for a new trial. Robinson v. State, 773 So.2d 943 (Miss.Ct.App.2000).
¶ 3. In November 1996, Robinson and a Mend, Derrick Knowles, were driving around Tupelo late in the evening. Robinson cut off another driver while merging into traffic. The driver of the second car, James Parks, became enraged. He followed Robinson until he stopped for a red fight.
¶ 4. Parks stopped his vehicle in the lane next to Robinson’s and the two men exchanged both verbal and non-verbal expressions of antipathy, ending with Parks’s offering to cause physical injury to Robinson and Robinson’s acceptance of that challenge. Parks, at six feet three inches tall and approximately 220 pounds, was considerably larger than Robinson. Armed with a knife he kept mounted to the dashboard of his car, Robinson exited his vehicle to meet Parks.
¶ 5. A brief struggle ensued, lasting perhaps two minutes. Parks realized Robinson was cutting him, disengaged and returned to his car where he informed his passenger, Randy Horner, that he had been stabbed and required medical care. However, he was only able to drive a short distance into a nearby parking lot before he lost consciousness. Horner stopped the vehicle and called for help. Parks had suffered eleven knife wounds, six of which were later found to be fatal. He died soon after the vehicle was parked without ever recovering consciousness.
¶ 6. Robinson, meanwhile, got back into his car, wiped the blood from his knife, commented to Knowles that he had really cut Parks, then drove home. He did not contact an ambulance or authorities. He was arrested a few days later and indicted for murder. Although the first trial ended in mistrial, the second resulted in a conviction for manslaughter. Following the reversal on appeal of that conviction, Robinson was again tried and convicted of manslaughter.
DISCUSSION
¶ 7. We reverse and remand because of a jury instruction issue. We discuss such other issues that might recur in a new trial. We also address the potential insufficiency of the evidence, because it would require a discharge of the defendant from further trial.

1. Sufficiency and weight of the evidence

¶ 8. Through each trial, Robinson has asserted self-defense as his justification for Parks’s death. He asserts he used his knife solely to defend himself from the assault of an enraged, much larger man who was beating him and causing justified fear of his fife. Robinson challenges the weight and sufficiency of evidence presented to defeat his stated defense.
¶ 9. In reviewing a claim of insufficient evidence, we accept as true the evidence favorable to the verdict and reverse only when we conclude that no reasonable juror could have found the defendant guilty beyond a reasonable doubt. Sullivan v. State, 749 So.2d 983, 993 (Miss.1999).
¶ 10. Two eyewitnesses testified at trial: Derrick Knowles, Robinson’s passenger, and Randy Horner, Parks’s passenger. Both testified that Robinson voluntarily left his vehicle to meet the challenge Parks had issued. They disputed Robinson’s testimony that he had been dragged from the vehicle. Neither thought Robinson was frightened. He did not lock the car doors or attempt to leave the scene, even after seeing that Parks was a considerably larger man than himself.
*892 ¶ 11. At the third trial, Knowles altered his testimony to some degree by stating that Robinson returned to the car for his knife after Parks knocked Robinson’s hat from his head. In the two previous trials, Knowles testified that Robinson took the knife with him when he exited the car. Horner testified that Robinson did not return to his car until the fight was over.
¶ 12. Another witness, Gail Jaggers, saw the fight from a passing vehicle. She described a “brief tussle” in which each man advanced and retreated at various points. Another passing witness, Jacques Bell, testified at the first two trials but was unable to be located for the third. His prior trial testimony was read to the jury but went unrecorded by the court reporter.
¶ 13. Taking as true all of the evidence presented that is consistent with the verdict, we find there was sufficient evidence to conclude that Robinson intended to inflict serious physical injury to Parks during the course of mutual combat, and that no self-defense justification existed.
¶ 14. In reviewing the weight of evidence presented, we will only overturn a verdict when our failure to do so would amount to an unconscionable injustice. Groseclose v. State, 440 So.2d 297, 300 (Miss.1983). It is the duty of the jury to determine the credibility of each witness and the importance of each piece of evidence offered. Gandy v. State, 373 So.2d 1042, 1045 (Miss.1979). The weight to be given any particular portion of evidence is not a matter for independent appellate determination when there is competent evidence to support the verdict. Id. There was sufficient and competent evidence presented to uphold the verdict.

2. Admission of photographs

¶ 15. Robinson objects to the admission into evidence of photographs of the body of James Parks. He argues that because he admitted to stabbing Parks, the photographs served no purpose other than to inflame the passions of the jury. Robinson also argues that the number of photographs admitted served no legitimate purpose.
¶ 16. This issue came before us on the first appeal. We found the photographs probative of the nature of the struggle between the two men and therefore admissible. Robinson, 773 So.2d at 951. Since there is no argument that the pictures admitted at this trial were different or were used in a different manner than before, our previous appellate ruling is part of the existing law of the case and further appellate review is not needed. Webster v. State, 817 So.2d 515, 522 (Miss.2002).

3. Motion for speedy trial

¶ 17. After remand, Robinson filed a written demand for a speedy trial on March 6, 2001. This trial did not commence until February 11, 2002, some 410 days after the mandate which remanded this case was issued. Robinson argues that the length of delay between remand and his third trial violated both his statutory and constitutional right to a speedy trial.
¶ 18. By statute, an accused must be brought to trial within 270 days of indictment unless good cause for the delay exists. Miss.Code Ann. § 99-17-1 (Rev.2000). This rule does not apply to re-trials after remand. Stevens v. State, 808 So.2d 908, 915 (Miss.2002). The constitutional requirement of a speedy trial remains, however.
¶ 19. Determining whether the constitutional right to a speedy trial has been violated requires a balancing of four *893 factors: (1) the length of delay; (2) the reason for delay; (3) the defendant’s assertion of his right; and (4) the prejudice to the defendant as a result of the delay. Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). No one factor is dispositive and each case is reviewed under the totality of the circumstances. DeLoach v. State, 722 So.2d 512, 516 (Miss.1998).
¶ 20. The first day of the calendar on a speedy trial claim under the constitution is the date of a remand mandate. Stevens, 808 So.2d at 916. Delays of eight months or more are presumptively prejudicial to the defendant, but this alone is not sufficient for the defendant to prevail. Id. It requires the court to balance the remaining three factors against this delay. Id.
¶ 21. There were 410 days that elapsed before Robinson was again brought to trial. Robinson asserted his right to a speedy trial on March 6, 2001. However, just twenty-four days later, he sought a continuance that would last 143 days in a joint motion brought with the State. Because it was a joint motion, the continuance is treated as if it were sought only by the defendant for speedy trial analysis. Sharp v. State, 786 So.2d 372, 378 (Miss.2001). Robinson alone sought two additional continuances, the first in July 2001, for an unspecified length of time, and the second that began in October 2001 and lasted for 110 days. Both continuances were granted with the stated purpose of allowing defense counsel time to prepare. Thus, Robinson was the cause of substantial delay between March 6, 2001, and the date of trial. Thus, even with the assertion of his right to a speedy trial this weighs very heavily against him under the circumstances.
¶ 22. Even for delay chargeable to the State, Robinson does not explain the nature of any prejudice. His argument appears to rest solely upon the March 2001 assertion of his right to a speedy trial and subsequent delay as a per se violation of his constitutional right. We find, however, that under the totality of the circumstances, there has been no violation of Robinson’s right to speedy trial.
A Description of Robinson’s knife
¶ 23. Robinson next contends the court erred in allowing the State to describe Robinson’s knife as a “stabbing knife.” He claims this description was highly prejudicial, irrelevant and prevented him from receiving a fair trial. The description arose during the State’s direct examination of Tupelo Police Investigator Tony McCoy. The prosecutor asked McCoy to identify Robinson’s knife, and asked, “Could it be described as a stabbing knife?” The defendant immediately objected. The court properly sustained the objection. McCoy never answered the question and Robinson never requested a jury instruction, admonishment or mistrial.
¶ 24. “As a general rule, it is presumed that when the trial judge sustains objections the jury understands that the trial court disapproves of the testimony or inquiry in question.” Davis v. State, 472 So.2d 428, 433 (Miss.1985). The trial court did all that Robinson requested by sustaining the objection and barring any answer. Anything further Robinson wished done he was required to request at that time. Beasley v. State, 803 So.2d 1204, 1209-10 (Miss.Ct.App.2001). The trial court was not required to take further action sua sponte under these circumstances. Id.

5. Peremptory challenges

¶ 25. Robinson contests the trial court’s handling of peremptory strikes, both his *894 own and those of the State. He argues that the court improperly permitted the State to strike black members of the veni-re based solely on race. Robinson also argues that his own use of peremptory strikes was improperly curtailed by the court’s refusal to permit him to strike white members of the venire.
¶ 26. Peremptory strikes may not be used in order to cause the systematic exclusion of members of an identifiable racial group from a jury. Batson v. Kentucky, 476. U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The party charging racial motive must first make a prima facie case of discriminatory action. Id. at 96, 106 S.Ct. 1712. Once made, the burden is placed on the party seeking to exclude the juror to articulate facially race-neutral reasons. Id. Third, the court must determine whether the reason is, in fact, race-neutral or merely a pretext for discriminatory intent. Id. at 97-98, 106 S.Ct. 1712. To this third step, Mississippi adds the requirement that the trial court “make an on-the-record, factual determination, of the merits of the reasons cited by the State for its use of peremptory challenges against potential jurors.” Hatten v. State, 628 So.2d 294, 298 (Miss.1993). This is a key consideration on this appeal, and thus we examine the Court’s language:
the trial judge, in determining which explanations are sufficiently race-neutral and which are not, should give an equally “clear and reasonably specific” explanation for his ruling.
Id., 628 So.2d at 299. In Hatten, the Supreme Court approved the findings when “the trial judge did not merely accept the specific reasons given by the prosecution at face value, but considered whether they were contrived.” Id.
¶ 27. What this means in practice is reflected in later caselaw. The Supreme Court in another precedent found that the findings made during the following examination were inadequate:
MR. DE GRUY [attorney for (Jeremiah) Robinson]: Your Honor, we make a Batson objection at this time. The State has exercised all five challenges against African-Americans, and we ask that they bring forward race neutral reasons.
THE COURT: All right.
MR. BUCKLEY [for the State]: Your Honor, Lawrence Jones, Panel 1, No. 3, was sleeping during Court’s instructions and during voir dire. I never saw him raise up. I couldn’t tell if he was awake or what was going on with him.
Number two, Rhonda Johnson. She was inattentive and failed to make eye contact with me and would never nod one way or another in this manner.
Number three, Floyd Tate. He teaches political science and sociology. We didn’t want him getting back in the jury room and explaining things in a sociological manner to the jury in any way. In fact, Gracie White and Alma Irving, both of them were inattentive. Especially, Mrs. Irving. I could not get her to make eye contact with me in any way.
Gracie White was not responsive to any questions, and it was as if I wasn’t even speaking. And I chose to strike them for those reasons, Your Honor.
MR. DE GRUY: Your Honor, we would object to all of those reasons. The law is now clear in Mississippi if they are going to base their strikes on things like sleeping, inattentive, no eye contact, the Court has to make a factual finding that those things are, in fact, true. We would ask the Court to make that determination that Mr. Jones was, in fact, sleeping.
THE COURT: Well, it would be virtually impossible for the Court to tell *895 whether or not someone was making eye contact with someone else. I mean, that would be—
MR. DE GRUY: I think if you can’t make a factual finding that [sic] the strike cannot be allowed.
THE COURT: I find that they would be racially neutral reasons and the Court will accept the representations of the officer of the court.
It is clear from the record that the trial court did not make the necessary findings as required by Hatten and Puckett [v. State, 737 So.2d 322 (Miss.1999)]. Further, the record shows that defense counsel specifically requested the Court to make such findings. We therefore remand this case to the Hinds County Circuit Court to conduct a proper Batson hearing pursuant to Hatten and Puckett.
Jeremiah Robinson v. State, 761 So.2d 209, 212 (Miss.2000). The State made allegations of inattention that the trial judge could not confirm. The public defender argued that unless such a fact-finding was made, the strike could not be accepted. The judge accepted the prosecutor’s factual assertion, anyway. We do not believe that the Supreme Court was prohibiting a trial judge from accepting either side’s assertions about what they observed during voir dire. That would be unfair to the parties and perhaps to the trial judges. We interpret this Jeremiah Robinson opinion to mean that precise fact-findings must be made when the issue is raised, both that the events occurred and that articulating them as reasons for the strikes was not a pretext for racial discrimination.
¶ 28. This framework is also applicable to claims against the defendant’s use of peremptory strikes. Georgia v. McCollum, 505 U.S. 42, 54-55, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992).
¶ 29. Appellate courts afford great deference to a trial judge’s decisions in matters such as Batson challenges and reverse only for clear error. Lockett v. State, 517 So.2d 1346, 1349-50 (Miss.1987). Here, the State sought to use peremptory strikes on three black members of the venire. We will examine each for compliance with these rules.
¶ 30. Karen Weatherspoon. The State initially sought to excuse her for cause, stating she was sleeping during portions of voir dire. The judge refused. The State then used a peremptory strike for the same reason. The judge found the reason to be race-neutral but also commented that he had not noticed that Weatherspoon had been sleeping. The judge’s explanation was not elaborate. The only reasonable inference is that he accepted that the prosecutor in fact believed that the juror had been dozing. Under the Supreme Court’s Jeremiah Robinson decision, which dealt with a challenge to an allegedly inattentive juror, this was an insufficient fact-finding.
¶ 31. Patricia Thompson. The State sought to strike her because she attempted several times to be excused from jury duty and clearly was “reluctant to serve.” The court refused to permit this strike. No comment on the basis for the denial was made. No reversible error can arise from the refusal to allow a strike to the State.
¶ 32. Titus Goree. The State argued that he was young, unemployed, unmarried and appeared to lack ties to the community. This strike was permitted by the court without explanation. By inference, this means that the judge accepted that these were race neutral and non-pre-textual reasons. Here too, we do not find the “clear and reasonably specific” explanation. Hatten, 628 So.2d at 299.
*896 ¶ 38. Robinson attempted to exercise his peremptory strikes on four white members of the panel.
¶ 34. Mark Abernathy. He was fifty-one years old and worked as an auctioneer. Defense counsel said that he was struck because his background removed him from Robinson’s peer group. The court refused to allow the strike, stating only, “The same works both ways, you understand?” That was not an adequate fact-finding.
¶ 35. Robert Crumpton. This fifty-eight year old man was also struck because he was said not to be Robinson’s peer. The strike was disallowed without comment. Here, too, no finding exists.
¶ 36. Gwen Garrett. She was struck because she attended church with the prosecutor, had a grandson in law enforcement and would likely favor the prosecution. The court stated, “You will be required to accept that one also. I heard the voir dire, Counsel. None of those causes hold water.” In the voir dire, Garrett had mentioned the church and the grandson but denied that her impartiality would be affected. Why these did not “hold water” needed to be explained in fact-finding.
¶ 37. Michael Price. This fifty-four year old unmarried father of two, was employed by the Department of Human Services. He was struck because his status as a single parent indicated irresponsibility and Robinson had past dealings with DHS. The court permitted the strike without comment. Permitting a strike by the defense requires no explanation, as the defense does not complain and the State may not seek a new trial.
¶ 38. Erline Clark. She was fifty-seven years old, and her race was not stated. She was married to a former Lee County deputy. She was struck because of concern that she would be biased in favor of the prosecution. The strike was permitted without comment. No reversible error exists here.
¶ 39. In this case, the trial court required each side to explain the reasons for the strikes. Some strikes by both parties were disallowed, but for several of the strikes denied to the defense or permitted to the State, there was no adequate fact-finding. If this were the only error we found on the appeal, we would remand for a hearing at which further fact-finding could be made. Robinson, 761 So.2d at 212. However, we find one other error that requires a reversal and a remand for a new trial or other proceedings at the discretion of the parties and court. We discuss that error next.

6. Jury Instruction

¶ 40. Robinson argues he was improperly denied a self-defense jury instruction. The jury was given two other self-defense instructions, which he argues did not present his theory of the case. His defense was that as a much smaller man than the victim Parks, he was justified to use deadly force to ward off the threat of serious bodily injury reasonably posed by Parks in the altercation.
¶ 41. This is the language of the denied instruction, D-6:
If you believe from the evidence that the deceased was a much larger and stronger man than the Defendant, and was capable of inflicting great and serious bodily harm upon the Defendant with his hands, and that the Defendant had reason to believe and did believe as a man of ordinary reason that he was then and there in danger of such harm at the hands of the deceased and used a knife, with which he fatally stabbed the deceased, to protect himself from such *897 harm, then the Defendant was justified, and your verdict shall be “not guilty” even though the deceas*ed may not have been armed.
The instruction was denied as being “repetitious of some other instructions” already given.
¶ 42. In cases of homicide, failure by the trial court to grant an instruction which presents the defendant’s theories of justification, defense or excuse is reversible error so long as there is some evidence to support the theory. Hester v. State, 602 So.2d 869, 872 (Miss.1992). We understand Robinson’s brief to state that this same instruction was given in his second trial. Regardless, it was not an issue in that appeal. Robinson v. State, 773 So.2d 948 (Miss.Ct.App.2000).
¶ 43. An instruction such as offered by Robinson has been approved when supported by evidence and no other instruction properly presents the defendant’s theory. Manuel v. State, 667 So.2d 590, 593 (Miss.1995). In Manuel, the female defendant argued that the male victim was much larger than she was and was hitting her with his fists. The court agreed that a “homicide with a deadly weapon is justifiable when the deceased assaults another with only his hands,” if the hands are used in a manner likely to cause death or serious bodily injury. Id. at 591-92. The failure to give an instruction such as Robinson offered here was reversible error. Id. at 593. The dissent cites a much earlier case, Brooks v. State, 360 So.2d 704 (Miss.1978). We find nothing useful in analyzing that opinion. The current state of the law is reflected in Manuel. Whether Brooks is distinguishable or not from Manuel, we have concluded that the present case is not. We therefore must apply the rule that was articulated more recently-
¶ 44. Even though there was error in Manuel, no error would exist here unless there was evidence introduced to support this defense. Even if there was contrary evidence, the defendant would be entitled to an instruction on his principal theory if there is some evidence to support it. Robinson testified that he feared for his life from the moment a stranger began chasing him through the streets of Tupelo, honking the car horn and flashing headlights. He testified that the driver of the vehicle was unknown to him; he could not even tell if the driver was a man or woman. Robinson also testified that he was completely unaware he was under attack until his car door was suddenly wrenched open and he was violently dragged out of his vehicle. By that time, he must already have gotten the knife since he stated that he never returned to the car to get it.
¶ 45. Under Robinson’s version of events, he would have gotten the knife before he made any assessment of the size of James Parks. Also under his own testimony, Robinson did not use the knife until he became reasonably fearful of serious bodily injury from the much larger man’s hitting him with his fists. We find that this was a theory of defense “supported by evidence, no matter how meager or unlikely,” that required an instruction. Manuel, 667 So.2d at 593.
¶ 46. We examine the other self-defense instructions that were given in deciding Robinson’s guilt in order to determine whether they might have obviated the need for this instruction.
If you find from the evidence in this case beyond a reasonable doubt that Alvin Lenard Robinson, ... did willfully, unlawfully, and feloniously, without authority of law, kill and slay James M. Parks without malice aforethought, in the heat of passion, by use of a deadly weapon, and not in necessary self-de *898 fense, then you shall find the defendant, Alvin Lenard Robinson, guilty of manslaughter. If the State has failed to prove one or more of these elements beyond a reasonable doubt, then you shall find the defendant not guilty.
The Court instructs the jury that if you find from the evidence in this case beyond a reasonable doubt that the defendant, Alvin Robinson, killed James Parks while resisting an attempted assault and that Alvin Robinson used more force than was reasonably necessary under the existing circumstances, then you may consider that fact as evidence in your consideration of guilt.
The Court instructs the jury that you are not to judge the actions of Alvin Robinson in the cool, calm light of after-developed facts, but instead you are to judge the defendants actions in the light of the circumstances confronting the defendant at the time, as you believe from the evidence that those circumstances reasonably appeared to the defendant on that occasion.
The Court instructs the jury that to make a killing justifiable on the grounds of self-defense, the danger to the defendant must be either actual, present, and urgent, or the defendant must have reasonable grounds to apprehend a design on the part of the victim to kill him or to do him great bodily harm, and in addition to this, he must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the jury to determine the reasonableness of the ground upon which the defendant acts.
¶ 47. Though the jury was told to consider Robinson’s actions in light of the manner in which the “circumstances reasonably appeared to the defendant on that occasion,” this does not explicitly raise the issue of the right in some situations to use a deadly weapon to ward off an attack with fists.
¶48. We turn, then, to the other instructions in Manuel to see if anything comparable to these Robinson instructions was given there. The Supreme Court does not indicate whether other self-defense instructions were given. The Court’s silence implies that other instructions were not a cure. The Manuel record reveals that two relevant instructions pertaining to self-defense were given:
Manuel Instruction S-l-A
The defendant, Nancy L. Manuel, has been charged by an indictment with the crime of murder for having caused the death of Wendell Norris.
If you find from the evidence in this case beyond a reasonable doubt that Wendell Norris was a living person and the defendant, Nancy L. Manuel, did wilfully and without the authority of law and not in necessary self-defense and of her deliberate design kill Wendell Norris by stabbing him with a knife, then you shall find the defendant guilty of murder.
If the State has failed to prove beyond a reasonable doubt any one or more of these elements, then you shall find the defendant not guilty.
Manuel Instruction D-3
The Court instructs the jury that not every taking of human life is a violation of the law because some forms of homicide are excused or justified by the law.
The Court instructs the jury that to make a killing justifiable on the grounds of self-defense, the danger to the Defendant, Nancy Manuel, must be either actual, present and urgent, or the Defendant, Nancy Manuel, must have reasonable grounds to apprehend a design on the part of the deceased, Wendell Norris, to kill her or to do her so *899 great bodily harm, and in addition to this she must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the jury to determine the reasonableness of the grounds upon which the Defendant, Nancy Manuel, acts.
¶ 49. In addition, both Manuel and Robinson here were given a “stand your ground” instruction, which permits a person to use deadly force if otherwise justified without the need to retreat.
¶ 50. Both of these quoted Manuel instructions are similar to instructions given for Robinson. In an abstract way, the instructions call on jurors to consider the reasonableness of the grounds on which the defendant may have been fearful of serious injury. In neither case was a specific instruction in which the facts of the disparate size and the right in some circumstances to use a deadly weapon in response to mere fists explained to the jury. Those instructions were not sufficient in Manuel to prevent reversal.
¶ 51. We can find no meaningful distinction between the Manuel instructions and the ones given here. The most important part of the defense was not explained, namely, that the defendant was justified in using a deadly weapon against the larger and intimidating Parks if Robinson reasonably perceived that he was in danger of death or serious bodily injury from Parks’s fists.
¶ 52. Manuel creates a problematic issue for self-defense instructions. Must an instruction be given on every factual issue of the reasonableness of the self-defense, at least if it embodies a legally correct theory? Relative size of participants in the fight, relative familiarity with fighting, and other factual issues may arise. Instructions that comment on the weight of evidence are to be avoided. Duckworth v. State, 477 So.2d 935, 937-38 (Miss.1985). Abstract instructions on legal principles which are not tied to the facts of the case are equally disfavored. John G. Corlew, The Mississippi Jury: Law & Prac. § 141 (1997). On balance, then, the usual instruction should fall between abstractness and emphasizing or weighing specific items of evidence.
¶ 53. The instruction offered by Robinson is almost identical to one discussed in Manuel. The only defect in Manuel was that it should have begun with the language “If you believe from the evidence that the deceased” was a larger man. Then it could make the other assertions that appear as Robinson’s instruction D-6. Manuel, 667 So.2d at 592. We find that Robinson’s counsel made the needed adjustments to the instruction and it was a proper one based on this evidence.
¶ 54. THE JUDGMENT OF THE LEE COUNTY CIRCUIT COURT IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL ARE ASSESSED TO LEE COUNTY.
McMILLIN, C.J., KING, P.J., THOMAS, AND GRIFFIS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY. CHANDLER, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BRIDGES, LEE AND MYERS, JJ.