# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-01596-COA

DANTE O. TAYLOR A/K/A DANTE O'BRYAN
TAYLOR A/K/A DANTE O'BRIEN TAYLOR
A/K/A DANTE TAYLOR

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 12/20/2016 |
| TRIAL JUDGE: | HON. CHRISTOPHER LOUIS SCHMIDT |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ABBIE EASON KOONCE |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED: 12/04/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

EN BANC.

FAIR, J., FOR THE COURT:

¶1. Dante Taylor was convicted of murder and sentenced to life without parole as a habitual offender. He appeals his conviction asserting that the jury was improperly instructed, entitling him to a new trial. In the alternative, he argues that the jury's verdict was against the overwhelming weight of the evidence. Finding no error, we affirm.

## FACTS

¶2. On September 23, 2014, Dante was at a friend's house when his sister, Tiffany Taylor,

called him crying. She said that their uncle, Willie Taylor, had jumped on her and choked her. At the time, Tiffany lived with their aunt, Michelle Evans, who is Willie's sister. Dante told Tiffany to call the police and press charges and to show police where Willie lived. Tiffany hung up the phone with Dante and then called the police.

¶3. Officer George Vitteck was dispatched to Evans's house in response to the domestic-disturbance call. He spoke with Tiffany, who informed him that she and Willie got into an argument over her child's bicycle. Tiffany told the officer that Willie hit her in the face and grabbed her around the neck. Officer Vitteck testified that Tiffany had no visible injuries.

¶4. Evans's daughter, Maya Taylor, witnessed the fight between Tiffany and Willie. Maya testified that Willie hid Tiffany's son's bicycle because he was riding the bike in the street, which Willie thought was unsafe. Willie and Tiffany started arguing, and Tiffany "[w]as all up on him, so he was pushing her up off of him. And once she start punching him he started hitting her back." Maya testified that the fight lasted "less than five minutes." When Tiffany called the police, Willie left. Maya also testified that Tiffany called Dante and told him that Willie had jumped on her, and Dante came to Evans's house later that night.

¶5. Madeline Adams, Dante's mother, testified that she called Dante that night and asked him to leave Willie alone. On direct examination, she testified that Dante said that "Willie put his hands on a female in the family for the last time" and that he was "going to do him" or "going to punish him." On cross-examination, Adams admitted that Willie was looking for Dante that night and wanted to hurt him.

2

¶6.    Dante testified on his own behalf.  He stated that he went to Evans's house that night to check on Tiffany and let her know that he loved her and was there for her.  Before Dante left, he told Tiffany to lock the door to the house in case Willie tried to come back and hurt her.  Dante also testified that, after Willie's fight with Tiffany, he "had words" with Willie.  Dante said that Willie threatened him, and, in turn, Dante told Willie that he was not going to *let* Willie do anything to him.

¶7.    Dante stated that his mother called him that night and told him that Willie had "just left [her] house, threatened to kill me, and [said] when he catch me he was going to kill me."  According to Dante, his mother warned "don't let [Willie] do nothing to you, son, you know your uncle be sneaky, watch your back."  Dante testified that he took his mother's warning seriously, and he believed that Willie was a real threat.  Dante testified that he obtained a pistol that night because he knew Willie wanted to kill him and he needed protection.  He denied that his mother asked him to leave Willie alone, and he denied telling her that he was going to "do" or "punish" Willie.

¶8.    Dante also testified about what happened the day of the shooting.  Tiffany called him that morning and told him that Willie came to Evans's house.  Dante testified that Willie told Tiffany "since she went and called the police and played police games" she had an hour to get her things and car and leave or he was "gonna to come back and beat the 'F' out of her."

¶9.    Dante told Tiffany that he was on his way to Evans's house, and he drove there in his vehicle.  When Dante arrived at Evans's house, Evans, Maya, and their neighbor were sitting

3

under a tree near the road playing cards. Dante testified that he tried to get Tiffany to leave Evans's house with him, but she did not want to leave because she was waiting on someone to come move her vehicle; she did not want to leave her vehicle because Willie had threatened to damage it or have it towed. Dante told Tiffany that he was going to wait on her. He drove to the store to get more cigarettes because he was anxious and "did not want to stay in that spot too long" given that Willie was looking for him. Dante testified that he did not think Willie was near Evans's house because he heard that Willie was looking for him at his mother's house.

¶10. After getting cigarettes, Dante returned to Evans's house, parked the vehicle in the driveway, and waited on Tiffany. Again, he called Tiffany to try to get her to leave with him, but she did not want to leave because she was still worried about her vehicle. Dante then got out of the vehicle to smoke a cigarette, and he walked to the side of the house to use the bathroom. On his way back to his vehicle, he saw Tawana Harper, his aunt's cousin. Harper testified that she had just arrived at Evans's house. After saying hello, Harper went inside the house, and, not long after, she heard a noise. She went outside and saw Willie lying on the sidewalk.

¶11. Maya testified that she was sitting outside under the tree with her mother and their neighbor, Leon Cox, when the shooting occurred. Maya saw Dante sitting on his vehicle for about five minutes before the shooting, but she did not see Dante holding a gun when he arrived. She testified that she saw Willie "walking very fast" toward Dante from behind the

4

house, yelling, and "charging at [Dante] with his fists." Dante was sitting on the vehicle at first, but he started walking toward Willie when Willie charged him. Maya testified that Dante shot Willie "when they got very close together," then got in his vehicle and left. Maya testified that it happened so fast that she did "not really" see the gun. She also testified that she did not hear Dante or Willie say anything to each other.

¶12. Evans testified that she and Cox were sitting at the table under a tree when she saw Dante park in the driveway, get out, and sit on the vehicle. She then saw Willie come "from around the house" to her house. She testified that he visited every day. Willie saw Dante and walked toward him. And when Dante noticed Willie, he walked toward him; Evans thought they were about to fight. Evans heard a gunshot and saw Willie on the ground. Evans also testified that she did not actually see the gun, and she did not hear what, if anything, Willie or Dante said during the incident. She testified that "it went so fast" that she "couldn't even tell" how much time passed between Willie walking from behind the house until the shot.

¶13. Cox testified that he lived two houses down from Evans. He was sitting outside under the tree with Evans and Maya during the incident. Cox recalled that he was sitting there talking to Evans and heard a shot, stating "That's pretty much all I know." He also testified that he was facing the road with his back to the house, and he did not really hear or see anything.

¶14. Dante admitted that he shot Willie with a .40 caliber handgun. He testified that after he "used the bathroom" on the side of the house, he returned to his vehicle and sat on the

5

trunk looking toward the street. He "had a feeling" telling him to turn around; and when he turned around, he saw Willie charging at him saying "I got you're a-S-S now . . . ." Dante explained "that's when I just pulled out my gun and I shot him. I tried to hit him in his leg, but the fact that he is charging me, running up on me, I guess it kind of went up and hit him in the stomach." Willie was unarmed.

¶15.    Dante testified that, "I didn't know if he had anything or not. It's just my life was threatened. And as big as he is, he could have did anything to me." Dante weighed between 140 and 160 pounds. According to Willie's autopsy report, Willie was 5' 10" tall, muscular, and weighed 290 pounds. Dante testified he did not intend to kill Willie. He explained that, "I was just trying to stop him. . . . I didn't want him to do nothing to me because for one, you know, he already twice my size at that time. And he threatened to kill me, so I was just defending myself."

¶16.    Dante acknowledged that he left the house in his vehicle after he shot Willie and that he wrapped the gun in a shirt and threw it out of the vehicle. He explained that he threw the gun because he could see police coming, he was scared, and he did not want to risk being shot by police if they saw him with a gun. Dante's mother testified that she talked to Dante after the shooting, and Dante told her that "Willie was approaching him" and "he pat[ted] his pocket." Dante also told her that he pulled out the gun and pointed it at Willie's chest. He did not say he pulled the trigger.

¶17.    Dr. Mark LeVaughn testified about Willie's autopsy as an expert witness in the field

6

of forensic pathology. He stated that Willie suffered a single gunshot wound to the abdomen, "right in the vicinity of the belly button." There was no exit wound. Dr. LeVaughn opined that the cause of Willie's death was the gunshot wound, and the manner of death was homicide. Dr. LeVaughn further testified that no stippling or "muzzle flash" was visible on Willie's body, which indicated that the barrel of the gun was more than two or three feet away.

¶18. The jury received instructions on first-degree murder, second-degree murder, imperfect self-defense manslaughter, and self-defense. After deliberations, the jury returned a verdict finding Dante guilty of first-degree murder.

## DISCUSSION

### 1. Weight of the Evidence

¶19. Dante did not raise the issue of weight of the evidence in his motion for a new trial. Instead, he challenged the sufficiency of the evidence and the trial court's grant of instruction S-13 and denial of instructions D-10 and D-20. Consequently, his argument is procedurally barred. *See Davis v. State*, 43 So. 3d 1116, 1122 (¶19) (Miss. 2010) (finding that failure to present to the circuit court a motion for new trial regarding the weight of the evidence renders the issue procedurally barred).

### 2. Instruction S-13

¶20. Dante argues that instruction S-13, a pre-arming instruction, should not have been given because pre-arming instructions have repeatedly been denounced by our supreme court.

7

*See, e.g.*, *Boston v. State*, 234 So. 3d 1231, 1234 (¶¶8-10) (Miss. 2017). Dante also argues

that the granting of jury instruction S-13 was error because it prevented him from claiming

self-defense.

¶21.    The decision to give or refuse jury instructions is within the discretion of the trial

court, and the well-settled standard of review is abuse of discretion. *Moody v. State*, 202 So.

3d 1235, 1236-37 (¶7) (Miss. 2016).    We must review jury instructions as a whole to

ascertain whether the jury was fully and fairly instructed regarding the applicable law.

*Conner v. State*, 138 So. 3d 143, 149 (¶13) (Miss. 2014).    "We will not find error if the

instructions fairly, though not perfectly, announce the applicable rules of law." *Id*. at (¶14).

"A criminal defendant is entitled to present his defense to the finder of fact." *Keys v. State*,

635 So. 2d 845, 848 (Miss. 1994).

¶22.    Instruction S-13 reads:

> The Court instructs the Jury that it is for the Jury to decide and if you believe
> from the evidence in this case beyond a reasonable doubt that the Defendant,
> Dante O'Bryan Taylor, armed himself with a deadly weapon and sought Willie
> Lee Taylor, with the formed felonious intention of invoking a difficulty with
> Willie Lee Taylor, or brought on, or voluntarily entered into any difficulty with
> Willie Lee Taylor with the design and felonious intent to cause serious bodily
> harm to Willie Lee Taylor, then the Defendant, Dante O'Bryan Taylor, cannot
> invoke the law of self-defense.

¶23.    A pre-arming instruction should only be used in "extremely rare incidents where the

instruction was supported by the evidence." *Dew v. State*, 748 So. 2d 751, 754 (Miss. 1999).

*see also Hart v. State*, 637 So. 2d 1329, 1332 (Miss. 1994); *Hall v. State*, 420 So. 2d 1381,

1388 (Miss. 1982); *Reid v. State*, 301 So. 2d 561, 564 (Miss. 1974); *Jobe v. State*, 97 So. 3d

8

1267, 1269 (¶9) (Miss. Ct. App. 2012). The purpose of a pre-arming instruction is "to inform the fact-finder that one cannot arm himself in advance when he is not in any physical danger, go forth and provoke a confrontation or difficulty with another, shoot the other, and then attempt to hide behind a smoke screen of self-defense." *Hart*, 637 So. 2d at 1337.

¶24. The Mississippi Supreme Court affirmed the use of an identical instruction in *Hall*, 420 So. 2d at 1386. In that case, Hall shot at two men who rented a trailer from him. *Id.* at 1384. He claimed that he fired the two shots "in an effort to scare them and give himself a chance to leave." *Id*. No one was hit. *Id*. Hall was indicted for aggravated assault. *Id*. at 1382. The record showed that "Hall left his employment, armed himself with a shotgun[, and] went to [the victim's] home after having been warned by his wife that they had threatened to mess him up if he came to the house . . . ." *Id*. at 1385 (internal quotation marks omitted).

¶25. More recently, this Court affirmed the use of a pre-arming instruction in *Jobe*, 97 So. 3d at 1270 (¶14). Jobe was angry over some missing meat at a cookout. *Id*. at 1269 (¶3). He grabbed a knife from a kitchen drawer and went outside to "handle" it, ultimately stabbing the victim. *Id*. This Court approved the use of the instruction because Jobe grabbed the knife when he was in no physical danger, went outside, and said he would "handle this." *Id*. at 1270 (¶13).

¶26. Here, testimony from witnesses showed that Dante armed himself when he was not in any physical danger, went to a house that Willie visited every day (which was also right

9

next to Willie's house), sat in front of that house with a gun in his back pocket, and then shot Willie from at least two feet away. Dante's mother testified that, the night before the shooting, Dante had threatened to "punish" or "do" Willie. And Dante testified that he got a pistol that same night after talking to his mother. Based on Mississippi precedent, we find the evidence here supported the court's decision to give a pre-arming instruction.

¶27. The instruction given did not preempt Dante's self-defense claim but submitted the issue to the jury for its determination. *See Hall*, 420 So. 2d at 1385. Further, Dante also received an imperfect self-defense instruction. The jury rejected both of those theories. After review, we find the trial court did not abuse its discretion in granting the pre-arming instruction.

### 3. Instructions D-10 and D-20

¶28. Dante argues that the trial judge's refusal to grant his proposed instructions D-19 and 20 was reversible error because both instructions supported an important theory of his defense—that Willie was much larger than Dante and "capable of causing serious bodily injury with his hands and fists." Testimony revealed that Willie was 5'10" tall and weighed 290 pounds when he was killed. During his interview with police, Dante reported that he weighed 160 pounds. Nothing in the record revealed Dante's height.

¶29. Instruction D-19 reads as follows:

> The Court instructs the Jury that if you believe from the evidence that the deceased Willie Lee Taylor was a larger man than the Defendant, DANTE O'BRYAN TAYLOR and was capable of inflicting great and serious bodily harm upon DANTE O'BRYAN TAYLOR with his hands or fists, and the

10

Defendant had a reason to believe as a man of ordinary reason that he was then and there in danger of such serious bodily harm at the hands of the deceased Willie Lee Taylor and the Defendant used a handgun, with which he fatally shot Willie Lee Taylor, to protect himself from such harm, then the Defendant was justified even though the deceased was not armed.

¶30. Instruction D-20 similarly reads:

The Court instructs the Jury that if you believe from the evidence that the deceased Willie Lee Taylor was capable of inflicting great and serious bodily harm upon DANTE O'BRYAN TAYLOR with his hands or fists, and the Defendant had a reason to believe as a man of ordinary reason that he was then and there in danger of such serious bodily harm at the hands of the deceased Willie Lee Taylor and the Defendant used a handgun, with which he fatally shot Willie Lee Taylor, to protect himself from such harm, then the Defendant was justified even though the deceased was not armed.

The trial court denied D-19 and D-20, finding that Dante's theories of self-defense were adequately covered elsewhere. Dante's proposed instructions have been approved in other cases only "when supported by evidence and [when] no other instruction properly presents the defendant's theory." *Robinson v. State*, 858 So. 2d 887, 897 (¶42) (Miss. Ct. App. 2003). In *Robinson*, the court affirmed a similar self-defense instruction based on evidence that Robinson and his victim were actually engaged in a physical struggle when the victim was stabbed. *Id*. at 891. Here, there was no physical struggle between Dante and Willie; the evidence showed that Dante shot Willie from at least two feet away. Further, Dante's theory of self-defense was properly presented in Instruction S-10:

The Court instructs the jury that to make a killing justifiable on the ground of self-defense, the danger to the defendant must be either actual, present and urgent, or the defendant must have reasonable grounds to believe the victim intended to kill the defendant or to do him some great bodily harm, and in addition to this, he must have reasonable grounds to believe there is imminent

11

danger of such act being accomplished . . . .

Reviewing jury instructions as a whole, we find that the jury was fully and fairly instructed regarding the applicable law.

¶31.   **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, WILSON AND GREENLEE, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS AND TINDELL, JJ.**

**CARLTON, J., DISSENTING:**

¶32.   I respectfully dissent from the majority's decision to affirm Taylor's conviction for first-degree murder and his sentence of life without eligibility for parole in the custody of the MDOC. I find that the trial court abused its discretion and committed reversible error by giving jury instruction S-13, the "pre-arming" instruction. I would therefore reverse Taylor's conviction and remand this case for a new trial.

¶33.   It is well-settled that "[j]ury instructions are generally within the discretion of the trial court, and the . . . standard of review is abuse of discretion." *Boston v. State*, 234 So. 3d 1231, 1233 (¶7) (Miss. 2017) (quoting *Moody v. State*, 202 So. 3d 1235, 1236-37 (¶7) (Miss. 2016)). "Jury instructions must fairly announce the law of the case and not create an injustice against the defendant." *Id*. (quoting *Davis v. State*, 18 So. 3d 842, 847 (¶14) (Miss. 2009)). The supreme court "has condemned outright the granting of any [jury] instruction that precludes a defendant from asserting a claim of self-defense[,]" explaining that "[a] criminal defendant is entitled to present his defense to the finder of fact." *Johnson v. State*,

908 So. 2d 758, 762 (¶15) (Miss. 2005) (quoting *Keys v. State*, 635 So. 2d 845, 848 (Miss. 1984)).

¶34.    In the present case, the State submitted jury instruction S-3, which provided as follows:

> The Court instructs the Jury that it [is] for the Jury to decide and if you believe from the evidence in this case beyond a reasonable doubt that the Defendant, Dante O'Bryan Taylor, armed himself with a deadly weapon and sought Willie Lee Taylor, with the formed felonious intention of invoking a difficulty with Willie Lee Taylor, or brought on, or voluntarily entered into any difficulty with Willie Lee Taylor with the design and felonious intent to cause serious bodily harm to Willie Lee Taylor, then the Defendant, Dante O'Bryan Taylor, cannot invoke the law of self-defense.

Taylor's defense counsel argued that a pre-arming instruction impermissibly commented on the evidence and was unsupported by the evidence. However, the trial court granted instruction, explaining that:

> there's conflicting testimony or it can be inferentially argued based upon the mother's testimony about what [Taylor] told her about his . . . intent or plans to go punish [Willie] or set it right, whatever the testimony was, which my appreciation was that there was some malice aforethought going on, perhaps. Which a jury could make a legal inference that that's why he had that weapon.

¶35.    The supreme court has held that "even if the great weight of evidence against the defendant supports a contrary view, the defendant is still entitled to present his defense to the jury unimpaired by instructions that preclude his right to self-defense." *Boston*, 234 So. 3d at 1234 (¶11) (quoting *Dew*, 748 So. 2d at 754 (¶19)). Additionally, in *Boston*, the supreme court explained that a pre-arming instruction is appropriate only where "[t]he record [is] uncontradicted that the defendants armed themselves with the intent to initiate a

13

confrontation." *Id*. at 1235 (¶12).  Here, the record reflects that the evidence presented at trial created a conflict as to whether Dante armed himself with the intention of initiating a confrontation with Willie and as to whether Dante was the initial aggressor.  Dante testified at trial that his mother called him the night before the shooting and warned him that Willie had come to her house looking for Dante and that Willie had threatened to kill him.

¶36.    I therefore find that the trial court abused its discretion and committed reversible error in granting jury instruction S-3.  I would therefore reverse Taylor's conviction and remand this case for a new trial.

**WESTBROOKS AND TINDELL, JJ., JOIN THIS OPINION.**