## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 98-KA-00547-SCT

*KENNETH DEWAYNE DEW*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/13/1998 |
| TRIAL JUDGE: | HON. ROBERT WALTER BAILEY |
| COURT FROM WHICH APPEALED: | KEMPER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES A. WILLIAMS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | BILBO MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 10/7/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/28/99 |

# BEFORE PITTMAN, P.J., McRAE AND SMITH, JJ.

# PITTMAN, PRESIDING JUSTICE, FOR THE COURT:

## STATEMENT OF THE CASE

¶1. Kenneth Dewayne Dew appeals from the Circuit Court of Kemper County, Mississippi, where he was indicted for the crime of aggravated assault in violation of Miss. Code Ann. § 97-3-7. After a trial by jury, Judge Robert Walter Bailey presiding, Dew was found guilty. Subsequent to a pre-sentence investigation, Dew was sentenced to twelve years with four years suspended and five years on supervised probation after having completed service of eight years. Further, defendant was ordered to pay a fine, fees and court costs.

¶2. After denial of defendant's motion for a j.n.o.v. or, in the alternative, a new trial, this instant appeal was timely noticed. Dew seeks reversal of his conviction and remand to the circuit court for a new trial.

## STATEMENT OF FACTS

¶3. In the late afternoon of April 24, 1997, the defendant, Kenneth Dewayne Dew, while arguing over beer, stabbed Henry Tisdale in the stomach. The stabbing occurred at a store next to the Deville Apartments in Kemper County, Mississippi.

¶4. At trial, Tisdale testified that on the day in question, at approximately 5:30 p.m., Dew approached Tisdale at the store while Tisdale and others were barbecuing and drinking beer. Dew repeatedly demanded that Tisdale give him some beer. After each demand Tisdale would walk away for a time then make his demand for beer once more. Tisdale continually refused, finally telling Dew to "go and get your

own beer." Dew then pushed Tisdale, who then pushed back. The two began "tussling." Tisdale grabbed Dew around the neck in order to force Dew to let go of Tisdale's waist. The two then fell to the ground with each releasing their holds. As Dew began to stand, Tisdale saw him reach into his pocket and pulled out a knife with the blade estimated at two to three inches long. Dew then stabbed Tisdale in the right side of the stomach.

¶5. After being stabbed Tisdale went home to get a knife and returned to the store. Dew had left the scene by the time Tisdale returned. An employee of the store, Richard Nicholson, told Tisdale to take the knife home, which he did. The knife was taken to the home of Hazel Tisdale, victim Tisdale's mother, who lived close to the store. Once there, Tisdale passed out, and the police and an ambulance were called which took Tisdale to the hospital where he remained for three days.

¶6. Tisdale testified that he did not have a knife prior to or during the altercation. Tisdale further testified that no threats were made either by himself or Dew prior to the altercation and that no threats were made by anyone else at the store during this time. Tisdale admitted stabbing Dew two years earlier in a café in response to some comments made by Dew concerning Tisdale's mother.

¶7. Prosecution witnesses Felicia Tisdale, Jimmy Cherry and Dewayne Coleman corroborated the testimony of the victim, Henry Tisdale. On direct examination, State's witness, Dewayne Coleman, testified that immediately prior to the fight Tisdale got up and moved toward Dew. He further testified that Tisdale was known by everyone to carry a knife.

¶8. On cross-examination of Coleman, defense counsel asked Coleman if he knew the reputation of Tisdale for peace and violence. Coleman responded, "He's a pain." The State's attorney objected due to lack of foundation which was sustained. Defense counsel attempted to lay the proper foundation, inquiring as to how long Coleman had known Tisdale. Coleman responded that the two had known each other for many years. Defense counsel then asked how Coleman knew that Tisdale was known to carry a knife. Coleman responded that Tisdale had carried a knife as long as he had known the victim. Defense counsel then asked whether Coleman knew Tisdale's reputation for peace and violence, and the State's attorney objected for lack of foundation which the judge again sustained. Defense counsel then asked why Coleman knew that Tisdale was known to carry a knife. Coleman essentially responded that he just knew that Tisdale carried a knife and that he would use it. The State's attorney objected on grounds of non-responsive answer and lack of foundation under M.R.E. 404. The issue was then discussed outside the presence of the jury.

¶9. Defense counsel contended that the issue centered on who was the first aggressor and that reputation for peace and violence was relevant at that time. The State's attorney argued that knowledge by Coleman of Tisdale's reputation for carrying a knife was irrelevant and that there was not proper foundation for allowing testimony concerning Tisdale's reputation for peace and violence. The judge recognized that testimonial evidence existed in the record that Tisdale approached Dew immediately prior to the altercation and that Tisdale was known to carry a knife.

¶10. The trial judge then focused on M.R.E. 404(a)(2) and the comments to the rule. The judge stated that it was in dispute as to who was the first aggressor, but found that no evidence had been offered of an overt act perpetrated by the victim against the defendant as required under the comments to M.R.E. 404(a)(2). Because this procedure had not been followed, reputation as to peace and violence of victim Tisdale, at that time, was deemed improper, irrelevant and inadmissible.

¶11. Dew testified in his defense. Dew contended that it was Henry Tisdale who repeatedly hounded Dew for beer. After the first request for beer, Dew testified that he refused, and Tisdale twice swung a shovel at him, missing each time. Dew later entered the store to buy another beer and was followed in by Tisdale who once again demanded beer from Dew. Dew then left the store and returned to the shed where everyone was gathered near the barbecue. Dew moved to pick up a previously opened beer, and Tisdale came and stood over the defendant in very close proximity. Dew testified that he saw Tisdale reach into his pocket and withdraw a knife. Dew then drew his own knife and stabbed Tisdale in the stomach.

¶12. Dew also recounted how he had been cut by Tisdale two or three months earlier during a disagreement in a café. Defense counsel asked for Dew to go into the particulars of the incident, but the prosecution objected to such particulars as being irrelevant. This objection was sustained.

¶13. Prior to the testimony of defendant Dew, Brenda Stennis testified on behalf of the defendant. Her testimony corroborated Dew's statements, adding that Tisdale displayed a knife to Dew twice prior to the stabbing.

¶14. Prior to giving closing arguments, defense counsel objected to the giving of jury instruction S-4 given as C-9, dealing with pre-arming by the defendant with intent to lure an adversary, as unsupported by the evidence. The objection was overruled, and the instruction was given.

¶15. On January 21, 1998, a jury of twelve men and women found Dew guilty of aggravated assault.

## STATEMENT OF THE ISSUE

### I. WHETHER THE TRIAL COURT ERRED IN GIVING AN INSTRUCTION THAT PRE-ARMING ONESELF TO LURE AN ADVERSARY IS NOT SELF-DEFENSE.

## DISCUSSION

¶16. Because this Court finds reversible error after analysis of the following issue, it is unnecessary for this Court to consider the other issues which Dew raises on appeal.

### I. WHETHER THE TRIAL COURT ERRED IN GIVING AN INSTRUCTION THAT PRE-ARMING ONESELF TO LURE AN ADVERSARY IS NOT SELF-DEFENSE.

¶17. Dew argues that the trial judge committed reversible error by giving jury instruction S-4, given as C-9, regarding pre-arming of defendant with intent to lure an adversary. The following is the appropriate standard of review regarding a jury instruction:

> "In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." *Coleman v. State*, 697 So.2d 777, 782 (Miss. 1997) (quoting *Collins v. State*, 691 So.2d 918 (Miss. 1997)). Furthermore, "[t]he general rule is that jury instructions must be supported by evidence and must provide that the jury must find each element of the crime under the proper standard of proof." *Wilson v. State*, 592 So.2d 993, 997 (Miss. 1991) (citing *Turner v. State*, 573 So.2d 1340, 1343 (Miss. 1990)).

*Turner v. State*, 721 So.2d 642, 648 (Miss. 1998).

¶18. It is manifestly clear that the evidence in this case does not remotely support the giving of jury instruction S-4, given as C-9. No evidence was proffered suggesting that Dew armed himself with the intent of luring the victim, Henry Tisdale, into a confrontation then using a deadly weapon to overcome him. When there is a total lack of evidence, it is not proper for a court to give a pre-arming instruction. *Hart v. State*, 637 So.2d 1329, 1337 (Miss. 1994). Furthermore, there is conflicting testimony here as to who was the first aggressor. When this ambiguity is present, a pre-arming instruction is not appropriate. *Barnes v. State*, 457 So.2d 1347, 1349-50 (Miss. 1984).

¶19. The S-4 (C-9) charge and instructions like it have been strongly criticized in a long line of Mississippi cases, allowing the instruction only in those extremely rare incidents where the instruction was supported by the evidence. *See Williams v. State*, 482 So.2d 1136, 1139 (Miss. 1986); *see also Keys v. State*, 635 So.2d 845, 848-49 (Miss. 1994). The rationale for caution regarding a pre-arming instruction is that in effect it is a peremptory instruction for the prosecution, impairing or precluding the defendant's right to self-defense. *Keys*, 635 So.2d at 849. "Even if the great weight of evidence against [the defendant] supports a contrary view, [the defendant] is still entitled to present his defense to the jury unimpaired by instructions similar to [S-4, given as C-9] which preclude his right to self-defense." *Id.* Where, as here, there is testimony to support the defendant's theory of self-defense a pre-arming instruction should not be given, as the Court looks with disfavor on instructions such as S-4. *Id.* While instructions are to be read as a whole and although a model self-defense instruction was also included, the S-4 instruction was neither necessary nor useful under the facts of this case. *Id.* at 848-49.

¶20. "This instruction and others like it are fraught with danger. . . . [citation omitted] When the State seeks this instruction, it does so at its own peril." *Hart*, 637 So.2d at 1338. In this case, pre-arming by Dew with the intent to provoke Tisdale and to use a deadly weapon as a means of overcoming the victim is clearly not supported by any evidence. To allow the instruction would result in manifest injustice. Therefore, judgment of the Kemper County Circuit Court is reversed, and this case is remanded for a new trial.

¶21. **REVERSED AND REMANDED.**

**PRATHER, C.J., SULLIVAN, P.J., BANKS, McRAE, SMITH, MILLS, WALLER AND COBB, JJ., CONCUR.**