# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-KA-00047-SCT

*KEVIN BOSTON a/k/a KEVIN E. BOSTON a/k/a*
*KEVIN EARL BOSTON*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 07/24/2015 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| TRIAL COURT ATTORNEYS: | TAKIYAH HERMIONE PERKINS |
| | WILLIE DEWAYNE RICHARDSON |
| | BRANDON ISAAC DORSEY |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BRANDON ISAAC DORSEY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | WILLIE DEWAYNE RICHARDSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 09/07/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**BEFORE WALLER, C.J., KING AND MAXWELL, JJ.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1. Kevin Boston was convicted of capital murder in the Washington County Circuit Court for the killing of Willie Dean. Boston raises five issues on appeal, one of which is raised by Boston himself in a *pro se* supplemental brief. In that supplemental brief, Boston argues that the trial court erred by granting the State's "pre-arming instruction." Finding that

the granting of the pre-arming instruction was reversible error, we reverse Boston's conviction and sentence and remand the case for a new trial.

## FACTS AND PROCEDURAL HISTORY

¶2.     On May 13, 2014, Barbara Boston called her estranged husband, Kevin Boston, the defendant, to come fix the flat tire on her car parked at her place of employment, Trigg Elementary. Because the school was administering state testing, Barbara could not go outside to meet Boston, so she left the keys inside the car. When Boston arrived at Trigg Elementary, he was unable to fix the tire because the jack was bent. While walking to the main school office to inform Barbara he could not change her tire, Boston met the victim, Willie Dean.

¶3.     Dean was a contract maintenance worker who reported for a work order at Trigg Elementary on the day in question. Additionally relevant, Dean and Barbara had a romantic relationship while Barbara was separated from Boston. However, Dean and Barbara previously had ended their relationship.

¶4.     How the contact between Boston and Dean initiated and what happened during their confrontation are points of sharp dispute in the record. Boston contends he acted in self-defense; whereas, the State claims Boston attacked Dean. State's witness Abbie Allen, a bus driver for Greenville Public Schools, testified that Boston approached Dean first.[1] However, Boston claimed Dean first approached him. Boston testified that Dean was upset because he was in Barbara's car, possibly indicating to Dean that Boston and Barbara might have

---

[1]While Abbie Allen testified on direct examination she saw Boston first approach Dean, she contradicted herself on cross-examination: Q. "Did you ever see Mr. Boston approach Mr. Dean?" A. "No, I didn't -- I just saw them talking."

reconciled. Boston further testified that Dean yelled he was going to kill Boston and then attacked him with a pair of pliers, hitting Boston on his wrist. The State attempted to discredit Boston's testimony by offering into evidence a picture of Boston's wrist taken after his arrest, which showed no visible injuries. Moreover, no pliers ever were recovered from the scene.

¶5.     Boston continued his testimony, explaining that after he pushed Dean off, Dean came running back toward him, at which point he fatally stabbed Dean once with a pocket knife. Boston testified he had purchased the pocket knife from Auto Zone a month before the incident. While the State did not present any direct evidence of what had caused the altercation between the parties, Abbie Allen testified that she saw Boston and Dean talking, and then they "got a little loud." No one saw the stabbing, though. After Dean was stabbed, the parties walked away from each other. The immediate aftermath of the stabbing was caught on the school's surveillance camera, but the footage does not show any physical or verbal altercation between the parties. After the incident, Rita Mobley, another employee of Trigg Elementary, testified that she found Dean standing in a doorway at the school, holding his chest and asking for someone to take him to the hospital. According to Mobley, Dean said, "[Kevin Boston] stabbed me for no reason." An ambulance took Dean to the hospital, where he died.

¶6.     On March 11, 2015, a grand jury indicted Boston in the Circuit Court of Washington County for capital murder on educational property grounds. *See* Miss. Code Ann. § 97-3-19(2)(g) (Supp. 2016) ("The killing of a human being without the authority of law by any

means or in any manner shall be capital murder in the following cases: . . . Murder which is perpetrated on educational property as defined in Section 97-37-17[.]"). The case was tried on July 21-24, 2015, at the close of which the jury found Boston guilty. In Boston's appeal, his attorney raised issues concerning the weight and sufficiency of the evidence, as well as the denial of a proposed self-defense jury instruction.[2] Boston in his *pro se* supplemental brief asserted his objection to the issuance of the State's "pre-arming instruction." Because the issue of the "pre-arming instruction" is dispositive, we decline to discuss the other assignments of error.

## STANDARD OF REVIEW

¶7. "Jury instructions are generally within the discretion of the trial court[,] and the settled standard of review is abuse of discretion." *Moody v. State*, 202 So. 3d 1235, 1236–37 (¶ 7) (Miss. 2016) (quoting *Bailey v. State*, 78 So. 3d 308, 315 (¶ 20) (Miss. 2012)). "Jury instructions must fairly announce the law of the case and not create an injustice against the defendant." *Davis v. State*, 18 So. 3d 842, 847 (¶ 14) (Miss. 2009) (citing *Milano v. State*, 790 So. 2d 179, 184 (Miss. 2002)). For example, in homicide cases, the jury should be instructed "about a defendant's theories of defense, justification, or excuse that are supported

---

[2]Boston's attorney raised the following issues:
(1) Whether the trial court erred when it failed to grant one of Boston's proposed self-defense instructions;
(2) Whether the State presented sufficient evidence to convict Boston;
(3) Whether Boston's conviction was against the overwhelming weight of the evidence;
(4) Whether the trial court erred in denying Boston's motion for directed verdict at the conclusion of the State's case-in-chief.

by the evidence, no matter how meager or unlikely." ***Evans v. State***, 797 So. 2d 811, 815 (¶ 11) (Miss. 2000) (quoting ***Manuel v. State***, 667 So. 2d 590, 593 (Miss. 1995)).

## DISCUSSION

¶8.     Boston asserts in his *pro se* brief that the grant of Instruction No. 7 "is contrary to and condemned by 140 years of Mississippi case law . . . ." The "pre-arming" jury instruction, offered by the State as S-4A, was granted by the trial court as Instruction No. 7, over the objection of Boston. The instruction reads as follows:

> The Court instructs the Jury that if a person provokes a difficulty, arming himself in advance, and intending, if necessary, to use his weapon and overcome his adversary, he becomes the aggressor and cannot claim the right of self-defense.

Boston argued that no evidence was presented that he had armed himself in advance intending to harm someone. The State argued only that Boston had retrieved the weapon from his pocket, and the trial court granted the instruction on that basis.

¶9.     While instructions like Instruction No. 7 have appeared in different forms throughout this Court's history, they first received the name "pre-arming instruction" in 1999. *See **Dew v. State***, 748 So. 2d 751, 754 (¶ 18) (Miss. 1999). Essentially, a pre-arming instruction is "a peremptory instruction for the prosecution, impairing or precluding the defendant's right to self-defense." *Id.* at 754 (¶ 19). This Court has used the term "pre-arming instruction" to

5

describe substantially similar language as used in Instruction No. 7 above, and its issuance was found to be reversible error. ***Johnson v. State***, 908 So. 2d 758, 762 (¶ 13) (Miss. 2005).[3]

¶10.    This Court has used strong language condemning the use of pre-arming instructions, as that type of instruction prohibits the defendant from being able to assert his theory of the case. ***Id.***; ***Dew***, 748 So. 2d at 754 (¶ 18); ***Keys v. State***, 635 So. 2d 845, 849 (Miss. 1994). The ***Johnson*** Court held that the "pre-arming instruction cut off the jury's consideration of self-defense." ***Id.*** at 763 (¶ 19). In other words:

> "A criminal defendant is entitled to present his defense to the finder of fact. This Court has condemned outright the granting of any instruction that precludes a defendant from asserting a claim of self-defense." ***Keys v. State***, 635 So. 2d 845, 848 (Miss. 1984) (citations omitted). This type of pre-arming instruction has repeatedly been denounced by this Court. ***Id.*** at 849.

***Johnson***, 908 So. 2d at 762 (¶ 15). Moreover, the ***Johnson*** Court explained that "this Court has stated numerous times that 'when the State seeks this instruction, it does so at its own peril.'" ***Johnson***, 908 So. 2d at 763 (¶ 19) (quoting ***Dew***, 748 So. 2d at 754 (¶ 20) (internal citations omitted)).

¶11.    This Court also found the issuance of a pre-arming instruction to be reversible error in ***Dew***, explaining, "[t]o allow the instruction would result in manifest injustice." ***Dew***, 748 So. 2d at 754 (¶ 20). The ***Dew*** Court based its conclusion on the principle that "[e]ven if the

---

[3]The instruction at issue in ***Johnson v. State*** stated:

> The Court instructs the jury that if a person provokes a difficulty, arming himself in advance and intending, if necessary, to use his weapon and overcome his adversary, he becomes the aggressor and deprives himself of the right of self-defense.

***Johnson***, 908 So. 2d at 762 (¶ 13).

great weight of evidence against [the defendant] supports a contrary view, [the defendant] is still entitled to present his defense to the jury unimpaired by instructions . . . [that] preclude his right to self-defense." *Id.* at 754 (¶ 19) (citations omitted). The ***Dew*** Court relied in part on ***Keys v. State***, which also found reversible error in the issuance of a pre-arming instruction. ***Keys v. State***, 635 So. 2d 845, 849 (Miss. 1994). The Court in ***Keys*** emphasized, "our decision today should clearly indicate that we look with disfavor on instructions such as S–10[, which is a pre-arming instruction]." ***Id.***[4]

¶12.    We have held that pre-arming instructions "should be given only in . . . exceedingly rare circumstances . . . ." ***Thompson v. State***, 602 So. 2d 1185, 1189 (Miss. 1992). Based on that standard, the granting of a "pre-arming instruction" has been affirmed in only three cases: ***Hart v. State***, 637 So. 2d 1329 (Miss. 1994); ***Hall v. State***, 420 So. 2d 1381 (Miss.1982); ***Reid v. State***, 301 So. 2d 561 (Miss. 1974). In each case, the record was uncontradicted that the defendants armed themselves with the intent to initiate a confrontation. ***Hart***, 637 So. 2d at 1334; ***Hall***, 420 So. 2d at 1385; ***Reid***, 301 So. 2d at 563.

¶13.    In ***Hart***, the defendant testified he armed himself and went to the victim's house

---

[4] ***Keys*** collected citations for prior cases in which the use of pre-arming instructions had been "denounced": ***Thompson v. State***, 602 So. 2d 1185 (Miss. 1992); ***Williams v. State***, 482 So. 2d 1136 (Miss. 1986); ***Barnes v. State***, 457 So. 2d 1347 (Miss. 1984); ***McMullen v. State***, 291 So. 2d 537 (Miss. 1974); ***Patrick v. State***, 285 So. 2d 165 (Miss. 1973); ***Craft v. State***, 271 So. 2d 735 (Miss. 1973); ***Ellis v. State***, 208 So. 2d 49 (Miss. 1968); ***Tate v. State***, 192 So. 2d 923 (Miss. 1966). *See also* ***Thompson v. State***, 190 Miss. 639, 200 So. 715 (1941); ***Brown v. State***, 186 Miss. 734, 191 So. 818 (1939); ***Vance v. State***, 182 Miss. 840, 183 So. 280 (1938); ***Coleman v. State***, 179 Miss. 661, 176 So. 714 (1937); ***Lee v. State***, 138 Miss. 474, 103 So. 233 (1925); ***Adams v. State***, 136 Miss. 298, 101 So. 437 (1924); ***Garner v. State***, 93 Miss. 843, 47 So. 500 (1908); ***Pulpus v. State***, 82 Miss. 548, 34 So. 2 (1903); and ***Lofton v. State***, 79 Miss. 723, 31 So. 420 (1902).

because it was his "only chance to settle [a dispute between the parties]." *Hart*, 637 So. 2d at 1334. The *Hart* Court's holding turned on the defendant's own testimony as to his initial aggression: "the proof is uncontradicted that, while in no physical danger from [the victim], [the defendant] armed himself in advance with the intent of provoking or bringing on a difficulty and shooting [the victim]." *Id.* at 1337. Similarly, in *Hall*–a case involving aggravated assault instead of homicide–the defendant's own testimony was that he armed himself and deliberately drove to the victim's house to engage in a confrontation. *Hall*, 420 So. 2d at 1384. The *Hall* Court observed:

> The record is uncontradicted that Hall left his employment, armed himself with a shotgun, went to the Bradleys [sic] home after having been warned by his wife that they had threatened to "mess him up" if he came to the house, and after his wife reported to him that Willie Bradley had cursed her and threatened her earlier during the evening.

*Id.* at 1385. The same reasoning applied in *Reid*, where this Court noted that, by the defendant's own testimony, he "deliberately armed himself with his pistol," drove to a trailer where the victim was located, and "immediately challenged [the victim]." *Reid*, 301 So. 2d at 564.

¶14. Here, the record is in conflict as to who initiated the fight in a chance confrontation, which the *Johnson* Court found reversible. *Johnson*, 908 So. 2d at 762 (¶ 13). The only evidence concerning the knife was that Boston bought the knife from Auto Zone about a month before the incident and was carrying it in his pocket. No evidence exists that Boston placed the knife in his pocket with the intent to provoke an altercation with Dean, with similar facts resulting in reversible error in *Johnson*. *Id.*

8

**CONCLUSION**

¶15.    Because there is no evidentiary support for the granting of the pre-arming instruction, we reverse Boston's conviction and sentence and remand this case for a new trial consistent with this opinion.

¶16.    **REVERSED AND REMANDED**.

**DICKINSON AND RANDOLPH, P.JJ., KITCHENS, KING, COLEMAN, MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR.**